**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

DARREN BARCOMB,

                              Plaintiff,

          v.                                              No. 07-CV-877
                                                          (GLS/DRH)

ARLENE SABO; JERRY LOTTIE;
LAWRENCE MILLS; WILLIAM LAUNDRY;
SHAWN P. MURPHY; and MARY
DUPELL,

                              Defendants,[1]
_____

**APPEARANCES:**                          **OF COUNSEL:**

RUCHELMAN & CRUIKSHANK, P.C.              ALLAN B. CRUIKSHANK, JR., ESQ.
Attorney for Plaintiff
49 Clinton Street
Plattsburgh, New York 12901

ELMER R. KEACH, III, ESQ.
Attorney for Plaintiff
1040 Riverfront Center
Post Office Box 70
Amsterdam, New York 12010

HON. ANDREW M. CUOMO                      MICHAEL G. McCARTIN, ESQ.
Attorney General for the State            Assistant Attorney General
   of New York
Attorney for Defendants
The Capitol
Albany, New York 12224

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

          Plaintiff Darren Barcomb ("Barcomb") brought this action  pursuant to 42 U.S.C. §

_____

          [1] Five other defendants were previously terminated from the action.  See Docket
Nos. 43, 54, 76.

1983 alleging that defendants, four State University of New York ("SUNY") employees and

two members of the New York State Police (NYSP), falsely arrested and maliciously

prosecuted him in violation of his constitutional rights.  Am. Compl. (Docket No. 19).

Presently pending is Barcomb's motion to compel production of documents for which

defendants have asserted the protection of the attorney-client privilege.  Docket No. 66.

Defendants oppose the motion.  Docket No. 71.  For the following reasons, it is

recommended that Barcomb's motion be granted in part and denied in part.


## I.  Background

Barcomb was employed as a police officer by SUNY beginning May 3, 1999 at the

SUNY Plattsburgh campus.  Am. Compl. at ¶ 16.  At all relevant times, defendants Arlene

Sabo ("Sabo") was employed as the Chief of Police, defendant Jerry Lottie ("Lottie") as the

Assistant Chief of Police, Lawrence Miller ("Miller") as the Director of Human Resources,

and William Laundry ("Laundry") as the Vice President for Student Affairs, all at SUNY

Plattsburgh.  Id. at ¶¶ 4-7. Defendants Shawn P. Murphy ("Murphy") and Mary Dupell

("Dupell") were employed as officers for NYSP.  Id. at ¶¶ 9,10.

On June 26, 2005, Barcomb was charged in a misdemeanor complaint in Suffolk

County, New York with menacing based on a complaint filed by a former girlfriend.  Am.

Compl. at ¶ 17.  The charges were later dismissed, but on June 30, 2005, Sabo and Lottie

summoned Barcomb to their offices, advised him of the pending charge, and drove him

directly from Plattsburgh to Suffolk County to answer the charge.  Id. at ¶¶ 17, 18.  As a

result of the charge, Barcomb was suspended without pay from his employment as a police

officer by SUNY.  Id. at ¶ 26.  Barcomb remained suspended until the suspension was lifted

n a ruling by the Public Employees Relations Board on December 5, 2006.  Id.

On January 1, 2006, Barcomb was stopped by Murphy and Dupell at an NYSP sobriety checkpoint and advised that he was a police officer.  Am. Compl. at ¶ 28.  At that time, Barcomb remained suspended from his employment with SUNY.  Id. at ¶¶ 26, 29. Barcomb's representation to Murphy and Dupell that he was a police officer came under investigation by the NYSP and in March 2006, Sabo was asked to provide a sworn, written statement regarding Barcomb's employment status.  Docket No. 71 at 2.  Sabo authored the statement on March 16, 2006, stating that Barcomb "is not employed by any SUNY Police agency at this time and has not been employed by any SUNY Police agency since his suspension on July 29[th,] 2005."  Docket No. 66-2.  This statement was utilized by Murphy in the criminal complaint against Barcomb alleging that Barcomb impersonated a police officer during the stop on January 1, 2006.  Docket No. 66-3.

At her deposition in this case, Sabo testified that she conferred with SUNY Associate Counsel Carolyn Pasley regarding the accuracy of her written statement before providing it to Murphy. Sabo Dep. (Docket No. 66-6) at 20-22, 27).  Based on this and other discovery, Sabo waived the attorney-client privilege concerning the advise she received from Pasley *"on [that] point*."  Docket No. 71 at 7 (emphasis in original).

Additionally during the course of the depositions, Susan Welch, a SUNY Plattsburgh employee, reviewed a plethora of documents prior to her deposition which affected her testimony and served as the basis for a time-line she created and distributed to other defendants.  Welch Dep. (Docket No. 66-11) at 64; Sabo Dep. at 10 (stating that Sabo reviewed "[s]ome of [her] arbitration testimony[, s]ome of the Bates stamped documents, [and] a time line," prior to her deposition).  These documents included electronic mail

3

communications shared among defendants.

Barcomb demanded production of these communications, defendants denied production on the ground that the communications were protected from disclosure by the attorney-client privilege, defendants served Barcomb with the requisite privilege log listing the documents for which the privilege was asserted, and this motion followed.  Defendants thereafter produced certain of those communications, identified as 609, 614, 617-18, 619-20, 621-22, 623-25, and 704 in their privilege log.  Docket No. 71 at 1.  However, there remained over forty additional electronic mail communications which are the subject of this motion.

## II.  Discussion

## A. Effect of Sabo's Waiver

The Federal Rules of Civil Procedure allow for broad discovery demands so long as the information requested is relevant and not privileged or otherwise limited by a court order. Fed. R. Civ. P. 26(b)(1).  "The attorney-client privilege is the oldest of the privileges for confidential communications . . . [designed]  to encourage full and frank communication between attorneys and their clients . . . ."  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  Communications are deemed confidential if:

> (1) . . . legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communication relates to that purpose, (4) made in confidence, (5) by the client, and (6) are at his or her insistence permanently protected, (7) from disclosure by the client or the legal advisor, (8) except if the protection is waived.

Trudeau v. New York State Consumer Protection Bd., 237 F. R.D. 325, 335-36 (N.D.N.Y.

2006) (citations omitted).  The privilege also protects communications between a government attorney and employees whom he or she serves "in civil suits between government agencies and private litigants."  Id. at 336 (citing In re Grand Jury Investigation, 399 F.3d 527, 532-33 (2d Cir. 2005)).  Here, there is little dispute that communications between the SUNY employees and SUNY counsel were protected by the attorney-client privilege.

The privilege may be waived, however.  Generally, purposeful disclosure of privileged information to a third party waives the attorney-client privilege.  See, e.g. In re Grand Jury Proceedings, 219 F.3d 175, 184 (2d Cir.2000) ("[W]here a corporation has disseminated information to the public that reveals parts of privileged communications or relies on privileged reports, courts have found the privilege waived.").  An exception to this rule, which allows otherwise confidential information to be disclosed to third parties, is "[t]he joint defense privilege [or common interest doctrine, which] is not a stand alone doctrine but is rooted solely within, and is solidly based upon, the attorney-client privilege."  Lugosch v. Congel, 219 F.R.D. 220, 236 (N.D.N.Y. 2003) (citing United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989)).  Thus, establishing that a communication is protected pursuant to the joint defense privilege requires a showing that it is subject to an attorney-client privilege.  Schwimmer, 892 F.2d at 244.  "The burden of establishing the . . . privilege, in all its elements, always rests upon the person asserting it."  Id. (citations omitted).  Thus, the burden of demonstrating the applicability of the privilege here rests with defendants.

Defendants assert the joint defense privilege as an example of how a waiver by one of a group of individuals cannot serve to waive the attorney-client privilege of the other individuals.  See Interfaith Housing Del. v. Town of Georgetown, 841 F. Supp.1393, 1400-

5

02 (D. Del. 1994) (collecting cases finding that "waiver of privileges relating to information shared in joint defense communications by one party to such communications will not constitute a waiver by any other party to such communications.") (internal quotations marks and citations omitted).  However, the elements of the joint defense privilege must first be demonstrated for the privilege to apply.

The joint defense privilege is often invoked where "multiple persons are represented by the same attorney."  Denney v. Jenkens & Gilchrist, 362 F. Supp. 2d 407, 415 (S.D.N.Y. 2004) (citations omitted).  In order to benefit from the privilege's protections, the asserting party must show that (1) there was an agreement between individuals, not necessarily in writing, "embodying a cooperative and common enterprise towards an identical legal strategy;" (2) the disputed communication "was given in confidence and that the client reasonably understood it to be so given;" and (3) a joint strategy among the individuals is apparent.  Id. (citations omitted).  ; see also Doctor's Assoc., Inc. v. QIP Holder LLC & IFILM, No. 06-CV-1710 (VLB), 2009 WL 1683628, at *3 (D. Conn. Feb. 26, 2009).  A non-party to the litigation may be involved in a joint defense agreement.  Lugosch, 219 F.R.D. at 238.

In this case, defendants do not assert a joint defense privilege although relying on such cases to argue that Sabo's waiver of her attorney-client privilege did not waive the privilege of the other defendants and non-parties who were included in the communications.[2]  While

---

[2] Electronic mail "present[s] unique problems" in discovery since the mail "may have many different recipients and authors," and include information which is both privileged and nonprivileged.  Thompson v. Chertoff, No. 3:06-CV-004 RLM, 2007 WL 4125770, at *2 (N.D. Ind. Nov. 15, 2007).  Defendants rely on Thomas for the proposition that copying multiple individuals on electronic mails does not waive the attorney-client privilege, but reliance on Thomas is misplaced.  While sending copies to multiple non-attorneys who are

6

Sabo cannot waive other individuals' attorney-client privileges if there was a joint defense privilege, defendants have failed to establish the existence of a joint defense agreement here.  There is no dispute that multiple individuals were represented here by the same attorney, but there exists no evidence that there was an agreement, formal or informal, among the defendants.  Thus, defendants have failed to establish the first prong of the analysis and the authority upon which they rely is inapplicable.

    As previously stated, defendants shared representation by government counsel, but they have failed to proffer any additional evidence to establish a separate and distinct attorney-client privilege for each with government counsel.  "[T]he relationship between a government attorney and a government official or employee is not the same as that between a private attorney and his client.  For one, in the government context, the individual consulting with his official attorney may not control waiver of the privilege."  In re Grand Jury Investigation, 399 F.3d at 534-35. "[S]ince entities can act only through agents, any privilege that attaches to communications on corporate matters between . . . employees and . . . counsel belongs to the corporation, not to the individual employee."  E.B. v. New York City Bd. of Educ., No. 02-CV-5118 (CPS/MDG), 2007 WL 2874862, at *4 (E.D.N.Y. Sept. 27, 2007) (internal quotation marks and citations omitted); see also United States v. Ferrell, No. 07-CR-66 (MJP), 2007 WL 2220213, at *2-3 (W.D. Wash. Aug. 1, 2007) ("It is generally agreed that the [attorney-client] privilege belongs to the government agency, and not an

---

involved in administrative matters directly linked to the legal issues does not waive the attorney-client privilege, m]erely sending copies to an attorney as one of many recipients "is insufficient to create privileged communications."  Id. at *3-*4.  Thus, in order to determine the intent of the parties, the content of each electronic mail "must be analyzed separately."  Id. at *2.  Merely relying on to whom the communication was addressed is insufficient to determine applicability of the privilege.

individual government employee . . . ").

    Generally, in a corporate setting, the only individuals able to assert or waive the

corporation's attorney-client privilege are those in officers and directors.  Mackenzie-Childs

LLC v. Mackenzie-Childs, No. 06-CV-6107, 2009 WL 2487125, at *5 (W.D.N.Y. Aug. 14,

2009).  If Sabo were among this group of core management in a corporate structure, she

would possess the authority to waive the corporation's attorney-client privilege.  Given

Sabo's position as Chief of Police at SUNY Plattsburgh, she could constitute an officer with

the requisite decision-making authority.  Therefore, her waiver would waive the institution's

privilege.

    Even if Sabo lacked the authority to waive the privilege, circumstances may exist in

which an individual outside this control group may waive the privilege.  The

> privilege may be waived not only by officers and directors, but
> also by lower-level employees, when, acting on behalf of the
> corporation, they disclose attorney-client communications to
> third parties–at least where the corporation authorized the
> employee's possession of the confidential communication, and
> the corporation took inadequate steps to prevent the employee
> disclosing it.

Denney, 362 F. Supp. 2d at 414 (footnotes omitted) (citing Jonathan Corp. v. Prime

Computer, Inc. 114 F.R.D. 693, 699-700 (E.D. Va 1987)).  A disclosure made under such

circumstances constitutes a limited waiver of the attorney-client privilege.  Id. at 414-15.

Therefore, because all defendants here were given access to these communications and

adequate steps were not taken to ensure the information's confidentiality, their actions in

sending emails to third parties constituted a waiver of the attorney-client privilege.

    Other courts in New York have contemplated "whether dissemination of a document

to [various] employees amounts to waiver of an entity's attorney-client privilege . . . ."  E.B.

8

v. New York City Bd. of Educ., 02-CV-5118 (CPS/MDG), 2007 WL 2874862, at *4 (E.D.N.Y. Sept. 27, 2007); see also Scholtisek v. Eldre Corp., 441 F. Supp. 2d 459, 464 (W.D.N.Y. 2006).  One court relied on a test asking whether the confidential information was shared with employees that "need[ed] to know . . . the content of the communication in order to perform [his or] her job effectively or make informed decisions . . . .").  Scholtisek, 441 F. Supp. 2d at 464 (citing cases).  If the recipient of the confidential information "is a policy maker generally or is responsible for the specific subject matter at issue in a way that depends upon legal advice, then the communication is more than likely privileged."  Id. (citations omitted).  In this circumstance, the burden rests on the party asserting the privilege to demonstrate that the dissemination to multiple employees was essential to retain the confidentiality of the communications.  Id.

In this case, it is not clear, nor do defendants assert, that all parties included in the distribution of the electronic mails needed to know the substance of the confidential information to perform their jobs adequately.  It appears that at least one individual who was privy to the majority of the electronic mails admittedly had no decision-making authority with respect to Barcomb's employment and was not a party to the present litigation.  Welch Dep. at 85 (testifying that she "was not a decision-maker," at the college).  Included in the circulation of the electronic mails were at least third parties, sometimes including counsel and sometimes omitting counsel.  The electronic mails were clearly not all for the purpose of obtaining or communicating legal advice.[3]  Thus, defendants and third parties alike possessed the authority to disseminate information which was otherwise, protected as

---

[3] Defendants rely solely on the attorney-client privilege.  Docket No. 66-1, Ex. A.

confidential.  Such authority is "incompatible with the confidential nature of a

communication to an attorney and amounts to a waiver of the privilege."  E.B., 2007 WL

2874862, at *5.

No individual privilege exists between the government employees and government

counsel.  There exists only the privilege belonging to SUNY.  To the extent such a privilege

existed, the electronic mails were not protected because it was waived both by (1) Sabo's

authority to waive the privilege on behalf of SUNY which she did when she placed

Barcomb's employment status at issue, and (2) defendants' unlimited access to and

dissemination of confidential information to multiple third parties which was incompatible

with preserving confidentiality.  Accordingly, defendants' motion on this ground is denied.


**B. Scope of Waiver**

Barcomb contends that defendants have effectively waived all protection regarding

communications concerning Barcomb's criminal charges, administrative proceedings, and

employment decisions.  Defendants contend that the stipulated waiver was much narrower.

The attorney-client privilege cannot be used both as a shield and a sword.  United

States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) (citing In re von Bulow, 828 F.2d 94,

103 (2d Cir. 1987)).

> It is well established doctrine that in certain circumstances a
> party's assertion of factual claims can, out of considerations of
> fairness to the party's adversary, result in the involuntary
> forfeiture of privileges for matters pertinent to the claims
> asserted.  The loss of the privilege in these circumstances is
> sometimes described as *implied waiver* . . . [or] *at issue waiver*
> because it results from the party having placed a contention at
> issue . . . Forfeiture of this nature is justified by considerations of
> fairness to the adversary . . . [as] it would be unfair for a party

10

> asserting contentions to an adjudicating authority to then rely on
> its privileges to deprive its adversary of access to material that
> might disprove or undermine the party's contentions.

John Doe Co., 350 F.3d at 302 (internal citations and quotation marks omitted); see also

Trudeau, 237 F.R.D. at 340.

Inquiry regarding unfairness centers on "having to defend against a privilege holder's

claim without access to pertinent privilege material that might refute the claim."  Trudeau,

237 F.R.D. at 340 (quoting John Doe Co., 350 F.3d at 304).  Accordingly, when "the

privilege holder took affirmative steps to inject privileged materials into litigation," continued

assertion of the privilege is deemed unfair.  In re Sims, 534 F.3d 117, 132 (2d Cir. 2008)

(citations omitted); see also Trudeau, 237 F.R.D. at 340 ("Thus, . . . where a party contends

facts to an adjudicating authority (a court, jury or decision maker) [and] then relies upon the

privilege to deprive its adversary of access to the material that might disprove, impeach,

effectively contest, rebut or undermine the party's contention, such would be unfair.")

(internal quotation marks and citations omitted).  If a waiver is found, the waiver applies to

the entire subject matter of the communications defined as narrowly or broadly as the facts

of each case require.  In re Om Group Securities Litig., 226 F.R.D. 579, 591 (N.D. Ohio

2005) (citations omitted).

In this case, the parties have already stipulated to a waiver.[4]  The question

---

[4] Defendants acknowledge that Sabo's waiver was an at-issue waiver since one of
her defenses is that she relied on the advice of SUNY counsel regarding the accuracy of
her written statement to the State Police regarding Barcomb's employment status.  Docket
No. 71 at 3.  Sabo waived the attorney-client privilege with respect to "the accuracy of the
statements . . . related to plaintiff's employment status."  Id. at 7.  The waiver issue arose
from Sabo's response to an interrogatory in which she stated that (1) she consulted with
SUNY counsel prior to giving the statement, which was later incorporated into the criminal
charges filed against Barcomb; (2) SUNY counsel assisted in the preparation of the

presented, then, is the scope of that waiver.  As previously stated, the scope of the waiver encompasses all communications related to the subject matter of Barcomb's employment status.  Defendants have supplied Barcomb with documents 609, 614, 617-18, 619-20, 621-22, 623-25 and 704[5] in response to Barcomb's present motion.  Docket No. 71 at 1. These documents directly discuss whether Barcomb was an employee of SUNY, typically using the word "employee" or "employment status."  An ex parte, in camera review of the remaining electronic mails on defendants' privilege log has been conducted.

Those communications dealing with the District Attorney's decision whether to continue the criminal impersonation charges fall within the scope of Sabo's waiver.  While the terms "employee" or "employment status" do not appear in these messages, it is clear that their contents directly discuss whether Barcomb was employed by SUNY at the time the criminal charges were initiated and what effect that employment status had on the criminal matters and the administrative proceedings which followed the filing of the criminal charges.  Additionally, the contents of the communications make clear that Barcomb's suspension was strongly influenced by the fact of the criminal charges and that the criminal charges were influenced by Barcomb's employment status.  Accordingly, all communications regarding Barcomb's perceived employment status and its effect on the subsequent criminal and administrative proceedings fall within the scope of Sabo's waiver. Therefore documents 16-17, 287, 510, 522, 608, 615-16, 627-30, and 632-34 must be

---

statement; and (3) SUNY counsel advised her Barcomb was not then employed as a SUNY police officer.  Id. at 7.

    [5]As designated by the page number references in defendants' privilege log.  Docket No. 66-1.

disclosed to Barcomb by defendants.

Additionally, those communications concerning the <u>Plattsburgh Press Republican</u> newspaper article and defendants' responses to the media and public also solicit legal advice as to how to address publicly Barcomb's suspension.  These communications are also subject to disclosure based upon the at-issue waiver because they discuss the relationship between Barcomb's employment status, criminal charges, and disciplinary actions at SUNY.  Finally, those communications regarding the administrative hearing that Barcomb attended must be disclosed as the line of questioning clearly concerned both defendants' and Barcomb's perceptions of his employment status.  Thus, documents 139, 511, 606, 607, 612-13,[6] 736-42, and 751 must also be disclosed.

Defendants have identified an audio recording of a message left by Barcomb's counsel, Elmer R. Keach, III, Esq. ("Keach"), which was disclosed to Barcomb as document 262.  Docket No. 71 at 9.  Other documents relating to this message left by Keach were included in the log of privileged communications.  These communications are not protected by the attorney-client privilege and are discoverable.  <u>See</u> <u>generally</u> Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter . . . . .").  Accordingly, documents 743, 749, and 750 must be disclosed to Barcomb as well.

Similarly, included in the privilege log are numerous messages concerning the scheduling of Barcomb's administrative proceedings.  These communications do not seek or communicate legal advice as they are principally administrative in nature.  Defendants do

---

[6] Documents 612 and 613 are the precursor electronic mails to those contained in the electronic mails disclosed to Barcomb in document 614.  Thus, these communications were previously disclosed and the failure to include these two separate, initial messages appears to have been an oversight.

13

not assert that the documents are protected by any privilege other than the attorney-client privilege but contend that they are outside the subject matter of Sabo's at-issue waiver. However, to determine whether the waiver applies, the documents must first be privileged. As they are not privileged, they are subject to discovery unless irrelevant.  See generally Fed. R. Civ. P. 26(b)(1).  As defendants have failed to demonstrate irrelevance, the documents must be disclosed.  Accordingly, documents 264, 266, 268, 521, 546-47, and 752 must also be produced.

Defendants argue that one set of communications is irrelevant as they mainly concern defendants' impressions of Keach.  While these documents are not protected by privilege, they are clearly irrelevant to any claim or defense in the case.  Accordingly, documents 263, 265, 267, 519-20, 605 and 699 need not be produced.  Defendants also listed in their log documents concerning legal research regarding discussions between SUNY Counsel and Sabo seeking legal advice, they are privileged communications.  Thus, defendants correctly assert that the legal research in documents 707-09, falls outside the scope of Sabo's at-issue waiver as it addresses a different claim and different law than that presently in dispute here.  Therefore, these pages need not be produced.

Lastly, defendants produced a two-page electronic mail regarding coordinating witness schedules for Barcomb's administrative proceeding.  This communication is distinct from the documents previously mentioned and listed in the privilege log.  It is the only communication which defendants assert is covered by both the attorney-client and work-product privileges.  The communications are between SUNY Counsel and Sabo, but they are primarily administrative in nature.  As they do not seek or communicate legal advice or counsel, they are not covered by the attorney-client privilege.  However, the documents

were "prepared by [and] at the behest of counsel in anticipation of litigation . . . ." In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d 379, 383 (2d Cir. 2003) (citations omitted).  As such, they fall within the scope of the work-product doctrine. That doctrine is broader than the attorney-client privilege and requires discovery "only upon a showing [of] . . . substantial need . . . ." Id.  As the communications fall within the work-product doctrine, the applicability of any waiver must be determined.  Since the communications concern scheduling issues, they are distinct from discussions concerning Barcomb's employment status.  The documents do not, therefore, fall within the subject matter of Sabo's waiver.  Accordingly, the two pages of messages need not be produced.


### C. Fed. R. Evid. 612

During third-party Welch's deposition, she testified that a few months prior to the deposition, she and others printed all the electronic mail communications relevant to the case, sorted them into chronological order, reviewed them together, and sent them to Assistant Attorney General Mike McCartin.  Welch Dep. (Docket No. 66-11, Ex. L) at 86, 88-91.  Welch testified that it was "very possible" that the emails formed at least some of her current recollection of the events surrounding Barcomb's suspension, and that after reviewing and printing the electronic mails, she "put [a] time line together" which was "possib[ly]" shaped by the information she gathered while copying and correlating all of the electronic mail communications.  Id. at 87-88, 91-92.  Based on Welch's review and her recollection that defendants Sabo, Lottie, and Laundry were all given the same packet of electronic mails to review prior to their depositions, Barcomb demands production of the documents pursuant to Fed. R. Evid. 612.  Welch Dep. at 90-91.

15

Under Rule 612

> if a witness uses a writing to refresh memory for the purpose of testifying, either–
>
> > (1) while testifying, or
> >
> > (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,
>
> an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

"However, nothing in the Rule should be construed as barring the assertion of a privilege with respect to writings used by a witness to refresh his memory."  In re Rivastigmine Patent Litig., 486 F. Supp. 2d 241, 243 (S.D.N.Y. 2007) (citing Rule 612 advisory committee note). Courts have struggled with the extent to which disclosure is required by Rule 612 as "some . . . take the position that Rule 612 trumps the [attorney-client] privilege, such that a document that is reviewed by a witness prior to deposition must always be produced" while others "conclude[] that production of privileged materials could only be required where the privilege has been waived . . . , for example, if privileged communications were disclosed to an individual outside the privileged relationship [as opposed to] . . . an individual [simply] . . . review[ing] his own already privileged documents."  Id. at 243 (internal quotation marks and citations omitted).  A third "functional analysis" has also been applied in which, if a "court found . . . that the documents can be said to have had a sufficient impact on the witness' testimony . . . then . . . a balancing test [must] consider[] such factors as whether production is necessary for fair cross-examination or whether the examining party is simply engaged in a fishing expedition."  Id. (internal quotation marks and citations omitted).

16

Defendants contend that Welch's testimony did not establish that she firmly relied on any of the electronic mails and that Barcomb could not identify whether these electronic mails were listed in the privilege log.  However, in In re Rivastigmine, the underlying documents were not ordered produced because the witness (1) "was herself the author of each of the documents," so there was no fear of denying effective cross-examination, and (2) was not essential to the central concern of the case.  486 F. Supp. 2d at 244.  This case is distinguishable.

Welch testified that she did not author all the electronic mails to which she had access.  She had examined all these electronic mails while she was organizing them, and possibly used them as a basis for both her current testimony and the time lines that were used during the course of hers and others' depositions.  Welch Dep. at 64; Sabo Dep. (Docket No. 66-6, Ex. F) at 10 (stating that Sabo reviewed "[s]ome of [her] arbitration testimony[, s]ome of the Bates stamped documents, [and] a time line" prior to her deposition).  This demonstrates an a sufficient impact on witness testimony for both Welch and Sabo.  Additionally, it is unknown to what degree this electronic mail circulation impacted the testimony of Lottie and Laundry, who were also present for the photocopying, correlating, and reviewing the documents prior to the depositions.  Mass sharing of electronic mail communications raises a significant issue for fair and effective cross-examination concerning matters reviewed by a witness in preparation for his or her testimony.  Moreover, the time lines included information about Barcomb's suspension and criminal charges.  This information is directly relevant to Barcomb's theory of his case.  Accordingly, disclosure under Rule 612, does not constitute a fishing expedition but a necessary action to ensure fairness.

17

Therefore, in the alternative, the documents ordered disclosed in subsection B supra must also be disclosed under Rule 612.

### III. Conclusion

For the reasons stated above, it is hereby **ORDERED** that Barcomb's motion is **GRANTED** to the extent that documents 16-17, 139, 264, 266, 268, 287, 510, 511, 521, 522, 546-47, 606, 607, 608, 612-13, 615-16, 627-30, 632-34, 736-42, 743, 749, 750, 751, and 752 shall be disclosed on or before **January 8, 2010**, and is otherwise **DENIED**.

Dated:  December 28, 2009
          Albany, New York

_____
United States Magistrate Judge